IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| TAMI L. ALLREAD, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JO ANNE B. BARNHART, Commissioner of ) <br> Social Security, ) <br> ) <br> Defendant. ) | CV 05-762-CO <br><br> FINDINGS AND <br> RECOMMENDATION |

RORY LINERUD
LINERUD LAW FIRM
PO Box 1105
Salem, OR 97308

    Attorney for Plaintiff

KARIN IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant U.S. Attorney
1000 S.W. Third Avenue, Suite 600

1 - FINDINGS AND RECOMMENDATION

Portland, OR 97204

DAVID J. BURDETT
Special Assistant U.S. Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104

    Attorneys for Defendant

COONEY, Magistrate Judge:

## INTRODUCTION

Plaintiff Tami Allread brings this action for judicial review of a final decision of the Commissioner of Social Security denying her applications for disability insurance benefits (DIB) and supplemental security income payments (SSI) under Titles II and XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Commissioner's decision should be affirmed.

## BACKGROUND

Allread was born December 6, 1963. She attended school through the ninth grade. She worked in the past as a beverage server. She stopped working on September 4, 2001, because she had "too much pain [and was] sick all the time." Tr. 82.[1] She alleges disability beginning September 30, 2001, due to fibromyalgia, mental problems and sleep difficulty which limit her ability to work because "body parts don't work, I'm sick and in pain constantly."

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer.

Allread satisfied the insured status requirements for a claim under Title II through December 31, 2005, and must establish that she was disabled on or before that date to prevail on her DIB claim. 42 U.S.C. § 423(a)(1)(A). *See Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998).

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner has established a sequential process of up to five steps for determining whether a person over the age of 18 is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R §§ 404.1520, 416.920. Allread challenges the fifth step of the ALJ's decision.

For the purposes of step five, the Commissioner must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by her impairments. 20 C.F.R. §§ 404.1545, 416.945; Social Security Ruling (SSR) 96-8p.

The ALJ must then determine whether the claimant retains the RFC to perform work that exists in the national economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). Here the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can do. *Yuckert*, 482 U.S. at 141-42; *Tackett v. Apfel*,

180 F.3d 1094, 1098 (9th Cir. 1999). If the Commissioner meets this burden, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## **THE ALJ's FINDINGS**

The ALJ found that Allread's ability to work was limited by the combined effects of fibromyalgia, post-traumatic stress disorder (PTSD), cannabis abuse and headaches. He assessed Allread's RFC as follows:

> I find that she can lift up to twenty pounds occasionally, ten pounds frequently, standing and walking at least two hours in an 8-hour workday, sitting for six hours, limited to occasional use of ramps and stairs, no ladders, ropes or scaffolds, but may occasionally crouch. In the mental realm, the claimant has moderate limitations in the ability to carry out detailed instructions, to interact appropriately with the general public and to set realistic goals or make plans independently of others.

Tr. 19.

The ALJ elicited testimony from the vocational expert (VE) with a hypothetical question based on the foregoing RFC assessment and vocational factors reflecting Allread's age, education and work experience. The VE testified that there were jobs existing in significant numbers in the economy that such an individual could perform, including cashier II, assembler and addressor. The ALJ concluded that Allread had not established that she was disabled within the meaning of the Social Security Act.

## **STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Commissioner of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence and resolving ambiguities. *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. *Batson*, 359 F.3d at 1193. The Commissioner's decision must be upheld, even if the "evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

## DISCUSSION

Allread contends the ALJ failed to assess her RFC accurately. She contends the ALJ improperly failed to incorporate all the findings of an agency reviewing psychologist, discredited her testimony regarding panic attacks and anxiety and failed to include limitations related to fibromyalgia and headaches.

Allread challenges the testimony of the VE because the ALJ failed to include limitations in concentration, persistence or pace in the hypothetical question used to elicit the testimony.

Allread asserts that the foregoing errors demonstrate that the ALJ failed to develop the record properly.

### I. Agency Consultants

The Commissioner relies on medical and psychological consultants to make findings of fact about the nature of a claimant's impairments and the severity of the functional limitations they impose. 20 C.F.R. §§ 404.1527, 416.927(f); SSR 96-6p. They are highly qualified physicians and

psychologists who are experts in the evaluation of medical issues in disability claims under the Social Security Act. They do not treat or examine the claimant but review all available medical evidence in the complete case record.

Findings of fact made by these consultants are treated as expert opinions of nonexamining sources. Their opinions are held to stricter standards and are given weight only to the extent they are supported by the record and consistent with the record as a whole. SSR 96-6p. The ALJ is not bound by the findings of reviewing consultants, but may not ignore their opinions and must explain the weight given to the opinions in their decision. *Id.*

Bill Hennings, Ph.D., prepared a Mental Residual Capacity Assessment (MRFC) on June 2, 2004. He identified moderate functional limitations in only three areas of function: the ability to carry out detailed instructions; the ability to interact appropriately with the general public; and, the ability to independently set realistic goals. Tr. 292-93. The ALJ incorporated all three limitations in his RFC assessment. Tr. 19. By doing so, he adequately accounted for Dr. Hennings' expert opinion.

Allread argues that the ALJ accepted Dr. Hennings' findings regarding her diagnosis of PTSD, but ignored his findings regarding her anxiety disorder and panic attacks. This argument cannot be sustained, because the ALJ adopted all of the functional limitations identified by Dr. Hennings. By doing so, he adopted all of the functional limitations Dr. Hennings found attributable to all underlying diagnoses.

Allread also appears to argue that the ALJ should have recontacted Dr. Hennings for an updated opinion based on her testimony at the hearing on August 12, 2004. Generally, the ALJ should obtain an updated medical judgment from an agency psychological expert when subsequent psychological evidence is submitted. SSR 86-8. Allread has not identified any subsequent medical

or psychological evidence that could reasonably alter the conclusions Dr. Hennings reached in his MRFC. Indeed, there is no evidence in the record that reasonably suggests any change in Allread's condition between Dr. Hennings' MRFC on June 2, 2004, and the hearing two months later.

Allread challenges the ALJ's reliance on the Residual Physical Functional Capacity Assessment (RPFC) prepared by agency consultants Charles Spray, M.D., and Sharon Eder, M.D. Drs. Spray and Eder reviewed Allread's medical records and assessed her functional limitations resulting from the combination of her medically determinable impairments. Tr. 210-16. The ALJ reviewed the entire record and found that their RPFC was consistent with the record as a whole. Tr. 19.

Allread objects that Drs. Spray and Eder did not specify which of the limitations in their RPFC are attributable to fibromyalgia and headaches. This objection cannot be sustained under the regulations. Where a claimant has multiple impairments, the regulations provide: "If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process." 20 C.F.R. §§ 404.1523, 416.923. The agency consultants and the ALJ properly considered the combination of Allread's functional limitations rather than individual diagnoses.

 II.   **Credibility Determination**

The ALJ must assess the credibility of the claimant regarding the severity of symptoms, if the claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged and no affirmative evidence of malingering exists. *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996); *Cotton v. Bowen*, 799 F.2d 1403, 1407-08 (9th Cir.

1986). The ALJ in the present case found evidence of malingering, but also assessed Allread's credibility, concluding that her allegations could not be given full weight. Tr. 21.

The ALJ found Allread's credibility suspect because multiple instances from her treatment history suggested that she tends to overstate her symptoms. Tr. 19. For example, in June 1999, a rheumatology specialist found that Allread had "rather dramatic exaggerated findings" which he could not correlate with any objective evidence of organic disease. Tr. 145. In August 2003 Allread had minimal tenderness at some fibromyalgia points, but complained of pain whenever her examining physician touched any part of her body. Tr. 243. She sought treatment "with complaints of pain everywhere." Tr. 244. In September 2003, Dr. Lee McCollough expressed difficulty clarifying which medications Allread needed because she presented a "shifting landscape" of complaints. Tr. 241. In December 2003, an examining physician found Allread's condition difficult to assess due to her "exaggerated complaints with palpation." Tr. 278.

Although he recited the foregoing evidence of malingering, the ALJ proceeded to assess Allread's credibility. When making a credibility evaluation, the ALJ may consider objective medical evidence and the claimant's treatment history as well as any unexplained failure to seek treatment or follow a prescribed course of treatment. *Smolen*, 80 F3d at 1284. The ALJ may also consider the claimant's daily activities, work record and the observations of physicians and third parties in a position to have personal knowledge about the claimant's functional limitations. *Id.* In addition, the ALJ may employ ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms and other statements by the claimant that appear to be less than candid. *Id. See also* SSR 96-7p.

The ALJ considered proper factors and made specific findings to support his credibility determination. He reviewed the objective medical evidence and noted that there were minimal findings that did not support the profound debilitating symptoms she alleged.

The ALJ found Allread's credibility damaged by evidence of drug-seeking behavior. For example, in May 2003 Allread attempted to refill her narcotic prescription early, claiming that she had flushed unused doses down the toilet. Tr. 247. She was accidently administered twice her prescribed amount of narcotics in August 2003, and used them all. In October 2003, Allread attempted to mislead an emergency room physician to obtain narcotics exceeding those permitted by her primary care physician. Tr. 235.

The ALJ also relied on Allread's reports of daily marijuana abuse. Tr. 225. He reasoned that Allread's abuse of illicit drugs, together with drug seeking behavior, suggested that she also abused pain medications. Tr. 20. This gave the ALJ reason to question the credibility of the subjective reports of her symptoms.

With respect to her psychological impairments, the ALJ found Allread's credibility damaged by her repeated refusal of treatment for depression and anxiety. Tr. 273, 275, 276. The ALJ could reasonably conclude that a person experiencing debilitating depression or anxiety would accept medical recommendations to try antidepressants. While her medical providers have found her depressed and anxious, there are no reports in the case record supporting the debilitating panic attacks described in her testimony.

The ALJ reviewed two psychological consultative evaluations. In September 2002, Karen McClintock, Ph.D., performed a psychological assessment. Allread denied current depression and testing administered by Dr. McClintock painted a picture of only mild depressive symptoms. Dr.

McClintock found that Allread's prominent feature was anxiety manifested in irritability, loss of sleep and constant worry. She noted that Allread's use of marijuana 3 to 4 times a day increased her anxiety. Nothing in Dr. McClintock's findings or Allread's report to her support Allread's testimony regarding debilitating panic attacks. Tr. 222-29.

The ALJ requested a second psychological evaluation, which Allen Kirkendall, Ph.D., performed in May 2004. Allread did not mention panic attacks in her description of her mental health history. Tr. 284, 285. She indicated that her primary problem was depression and that she felt anxious when she was away from her house. Tr. 285. She did not mention debilitating panic attacks as a current functional impediment.

The foregoing and additional reasons stated in the ALJ's decision show that the ALJ had an adequate basis for discrediting Allread's statements. He did not err by concluding that her statements were credible only to the extent supported by objective evidence. Tr. 22. His findings are sufficiently specific to permit this court to conclude that he did not discredit her testimony arbitrarily. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

### III. Vocational Testimony

At step five of the sequential evaluation, the Commissioner must show that the claimant can do other work which exists in the national economy. *Andrews v. Shalala*, 53 F.3d at 1043. The Commissioner can satisfy this burden by eliciting the testimony of a vocational expert with a hypothetical question that sets forth all the limitations of the claimant. *Id.* The assumptions in the hypothetical question must be supported by substantial evidence. *Id.*

Allread challenges the hypothetical question used by the ALJ to elicit testimony from the VE because he did not include limitations reflecting her deficits in concentration, persistence or pace.

Allread's argument is based on the following statement from the ALJ's decision:

> In terms to the listing "B" criteria, the claimant has mild restrictions in activities of daily living, no more than moderate difficulties in maintaining social functioning and in concentration persistence and pace. Further there is no evidence of repeated episodes of decompensation.

Tr. 19.

The ALJ's reference to "B criteria" implicates step three of the sequential evaluation process, which is not disputed in this case. At step three, the ALJ must determine whether the claimant's impairments are equivalent to "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(d), 416.920(d). The criteria for these listed impairments, also called Listings, are enumerated in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments).

The listing criteria for mental impairments include ratings of the degree of limitation the impairments impose on the claimant in four broad categories of function, *viz.,* restriction of activities of daily living, difficulties in maintaining social functioning, deficiencies of concentration, persistence or pace and episodes of decompensation of extended duration. These are known as the "B criteria." If the claimant can show the requisite degree of limitation in these broad categories, and the other criteria for a particular listing, then the claimant will be presumed to be disabled and it is unnecessary to make an RFC assessment. 20 C.F.R. §§ 404.1520a(d), 416.920a(d); SSR 96-8. If the claimant does not show the requisite degree of limitation in the B criteria, the sequential evaluation must proceed and the ALJ must assess the claimant's RFC. The RFC assessment requires a more detailed evaluation of the claimant's limitations in specific work-related functions. SSR 96-8. This

is reflected on the MRFC worksheet, which includes 20 work-related functions that fall within the four broad categories of function represented by the B criteria.

The B criteria findings are not equivalent to a RFC assessment. They are too broad to be useful for vocational purposes, because they do not identify restrictions in specific work-related functions. Nor are the B criteria findings additional limitations beyond those identified on the MRFC. They describe in broad terms the same limitations that the MRFC describes in specific work-related terms.

Here the ALJ's hypothetical question reflected all of his findings regarding Allread's limitations in the MRFC categories of function. Those findings are supported by Dr. Hennings' MRFC and the record as a whole. The ALJ did not err by excluding a separate hypothetical limitation for moderate limitation in the B criteria.

### IV. Development of the Record

Allread asserts each of the foregoing claims of error as grounds for finding that the ALJ failed to develop the record fully. This argument is rejected. The foregoing claims of error have no merit for the reasons previously described.

In addition, the ALJ's duty to develop the record further is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). Allread failed to identify ambiguous evidence or any basis to find the record inadequate to allow for proper evaluation of the evidence. Accordingly, the ALJ had no duty to develop the record more fully.

## RECOMMENDATION

Based on the foregoing, the Commissioner's determination that Allread does not suffer from a disability and is not entitled to an award under Title II or Title XVI of the Social Security Act is based on correct legal standards and supported by substantial evidence. The Commissioner's final decision should be AFFIRMED and the case should be DISMISSED.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have ten days within which to file a response to the objections. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this __17__ day of February, 2006.

_____/s/_____
John P. Cooney
United States Magistrate Judge